Good morning, Your Honor. Maxwell Bleacher along with Taylor Wagner for the Apollon AFMS. And to begin with, let me thank you for accommodating what I hope will be a temporary physical disability. I appreciate your courtesy. May it please the Court, in the diminishing world of antitrust today, the usual cases reported revolve around whether evidence, as pled in the complaint or as proffered in opposition to a summary judgment motion, is sufficiently robust to make the claim of conspiracy under the antitrust laws, quote, plausible, which is the new magic word in antitrust. Unfortunately, you folks won't have the fun of dealing with that, because in this case there is no serious issue but that the evidence of anti-competitive conspiracy, of anti-competitive effect and injury, are literally overwhelming. Let me take a couple minutes of precious time to tell you about what this case consists of. These companies, FedEx, UPS, and their predecessors before them, DHL and Airborne, engage in shipping small parcels or packages. This is a huge, multibillion-dollar business. And up through 2008, the plaintiffs and other companies similarly situated, called third-party consultants, negotiated with these shippers reduced rates for their clients, and they contributed to an environment in which price competition was intense. DHL, a foreign-based shipper, a competitor of the defendants here, FedEx and UPS, had a reputation of being a price cutter. Can I, since your time is short, try to have you cut to the chase a little bit? Because I've got to say, I need help with the record because I've really struggled with the voluminous record in this case. And part of the district court's criticism below in granting summary judgment was its pre-order, pre-direction, that the parties have got to provide specific pin-site citations to the record or else failure to do so would be kind of a waiver for the district court to consider those pieces of evidence. And so do we now look at only the record that was before the district court in determining a trial-issued material fact? It would be enough, Judge Winn, to reverse the summary judgment. And I do admit, as we told Judge Bernal, that we did below that. He made an enormous issue out of it and then chose to exclude evidence where the better rule under ad management decision of this circuit would be to allow us to correct that deficiency. It was not a big deal. We did correct it internally. He never allowed us to file the revised statement. Okay. So let's say I'm looking at the record that was before the district judge and we're saying, okay, that's a discretionary call by the district judge not to allow you to basically correct those deficiencies. Now, under the record that was presented to the district court, I want you to kind of play out your per se antitrust violation claim and argument and perhaps help me with the record. Are you saying that the defendants, UPS and FedEx, refuse to deal with the third-party contractors or are you saying that they refuse to deal with the shippers who utilize third-party contractors? They basically refuse to deal with the third-party contractors and if there was persistent violation of that, then they would just threaten the shipper that they wouldn't take their shipments. Thank you. All right. So Mr. Bleacher, obviously what's bothering me, one of the things is that the district court thought there was not an adequate definition of the market. Would you give us a market definition? Now, what is this, a market for third-party consultant services? Is that what it is? Well, frankly, we adopted the definition that Judge Morrill adopted when she decided the motion to dismiss. She was the trial judge, and that was a market definition that consisted of consulting services in the shipping industry, somewhat broader. Actually, I like the one that UPS proposed and that we could have lived with had Judge Bernal simply said, let's go with that, and that has to do with them trying to find the exact language. It had to do with rate negotiations. UPS, in its papers, defined the market as great parcel carrier contract negotiation services. Parcel carrier contract negotiation services. That's at ER 545. If he had just simply chosen to adopt their definition, we could have gone to trial. But it's completely off the wall for him to left this conspiracy intact based on a determination that there wasn't a justiciable controversy about how to define the market. In fact, if there wasn't a judicial, if there wasn't a controversy, it's because the UPS definition was probably correct and it's probably something we should have accepted. We simply dissented from it because it was different from what Judge Morrow said and what Judge Morrow said we thought was the law of the case. But as you know, the jury doesn't have to take either the plaintiff or the defendant's definition of the market. It can make up its own market definition, which tells you that it's almost folly to engage in a pretrial attempt to determine what the relevant market is. The question that Judge Bernal should have looked at is, does the record contain evidence from which a jury could make a determination of what the relevant market is? And the answer to that is overwhelmingly yes. We would have started with the UPS definition of parcel carrier contract negotiation services. UPS at ER 485 also recognized that the plaintiff's, quote, core service is advising and representing shippers in negotiating competitive small parcel and freight contracts. So they understood. Everybody understood what we did. Then FedEx recognized at ER 1313 that the reality in that negotiating with FedEx and UPS is very complicated. They acknowledge it's complicated, and many customers need these consultants to better understand what a good deal looks like. And then if there was any question about it, UPS observed at ER 3935, quote, we must consider third-party negotiators as a direct competitor and treat them as such. That's in the record. He didn't expunge that. And that tells you that there's competition between them, and that competition is the genesis of the market definition that a jury could have found. Then you look at ER 1561 and 1158, and these are FedEx documents, and it said they analyzed that they're being called upon to provide consultation services, and they're trying to convince customers that they can do it better than my client or other third-party consultants. It's a recognition that they compete on the consulting side, not just as a shipper. And then at the summary judgment hearing, Judge Bernal commented twice. We pointed this out at the brief. He commented twice that there was overlap between what the plaintiff did and what the defendant did. I mean... Am I correct that below the plaintiffs didn't argue this as a tying case, that defendants unquestioned market dominance in the market of shipping services? They utilized that in order to force customers to buy the Thai product of consultative services. I'm not sure I understand it, but I do believe you can make a larger market out of shipping services and label these third-party consultants as participants, which is what the Court did essentially in ad management and yellow pages. I mean, this is not a new problem. This Court has dealt with this problem repeatedly, and the plaintiff has never been thrown out of court on a summary judgment. Those cases have all gone to the jury. Most of them were mine. Ad management, yellow pages, all cases in which consultants were influencing the market in a downward direction by negotiating contracts that were less favorable to the defendant group as here than would otherwise have been the case. And by doing that, they invigorate the competitive process and reduce prices, which is why FedEx and UPS chose to put them out of business. So the definition of what constitutes a market is does one party have the power to deprive the other party of a significant level of business. That's the test. It comes out of yellow pages, Thurman, Sem, Jose, Mercury. There's any number of Ninth Circuit cases which say that's the test. Now, if you apply that test, if Judge Bernal stopped to apply that test, it's evident. It's evident. There's no factual dispute, but that the third-party consultant activity took money out of the charges they made to these shippers. Do you remember the document that said, oh, I think it was a UPS document, said we love to deal with the customers directly without the third-party consultants because when we do that, we can kick their butt. So, obviously, there was an abundant amount of evidence from which he could have found that there was competition. Okay. He makes a big point. First of all, he ignored Judge Morrow's decision, which alone would have probably prevented some, should have prevented summary judgment. He makes a big deal about inclusion and exclusion and in-house personnel. They're legitimate questions raised by the defendants. That's what we get. That's why we have jury trials. None of it is summary judgment material. And yet he said, as a matter of law, you get tossed out of here because you didn't include every possible rate type of consultant. Let me make one final point because I'm told I have limited time left. Judge — the judge tossed out Mr. Brotman as a witness, and he gave no opportunity to correct the deficiency, and he gave us no opportunity to fix anything he didn't like about Mr. Brotman. He had a litany in which he said that Brotman wasn't, quote, qualified. Well, the test to be qualified as an expert in the Federal system is pretty low. You don't have to be an economist. You don't have to have a Ph.D. You just have to have sufficient wisdom or experience or knowledge that you could help the jury understand the issues. And Mr. Brotman could have done that just as he's done in three other cases testifying as a witness on antitrust issues, which he teaches. He teaches at the Harvard Law School and at the Harvard University. And he's had 30 years' experience as a business consultant. You're right about the time. We'll give you time for rebuttal. I'll hold on to a minute for rebuttal. Okay. Thank you, Your Honor. Good morning, Your Honors, and may it please the Court. Deanne Maynard for UPS, and I'm here with my co-counsel as well as counsel for FedEx, Colleen Hutch Wilson, and I'm going to be presenting. I'm going to be using the allotted time for Avalese. We believe the district court's judgment should be affirmed, and I'd like to just start by answering some of Your Honor's questions, and I'm happy to answer any other questions or present my arguments as well. But Judge Tashima, if I could start with your question about the market issue. The district court correctly concluded that the plaintiff had the burden of defining the relevant market in this case, and the market that the plaintiff put forward, the shipping consultations market, which is very amorphous and has morphed over time and has shifted again on appeal, was not a proper market. Was that the market that Judge Morrow described? It was a market that Judge Morrow suggested. Yes, that's correct. And Judge Morrow concluded that they had adequately, eventually sufficiently pleaded in, like, their third amended complaint or second amended complaint. But she also repeatedly said in the order where she did that that it might not have been a market that the plaintiff had the burden of defining the relevant market. And that's clearly the case here, Your Honor. My friend on the other side suggests that summary judgment is inappropriate in antitrust cases, and although that may have used to have been the law, this Court's recently held that's not anymore the case, that, of course, antitrust plaintiffs are held to the same burdens as everyone else, and under Morgan-Strand is the plaintiff's burden to define a relevant market, and the plaintiff here has utterly failed to do so. He has no evidence. The only expert that they proffered has been properly struck, not just because of his qualifications, but also because he has no reliable method. In fact, he testified that his method is whatever I'm thinking about at the time. It was clearly not an abuse of discretion to strike Mr. Rotman, and therefore that leaves the plaintiff here with no evidence of a relevant market. Judge Tashima, you asked what market he would propose, and he today adopted the market that UPS and Federal Express suggested in the district court. Well, again, it's not the defendant's burden to come forth with a market, and AFMS never adopted, in fact, fought the market that UPS and FedEx proposed in the district court, and with good reason. UPS and FedEx don't participate in that market, the market for rate negotiation services. Every shipper who testified, every shipper who testified, testified they would not switch from a third-party negotiator like AFMS to UPS or FedEx to provide the services that the third-party negotiators provide. That's the relevant question under MAP-OIL, under this Court's cases, to determine who's a competitor. We do not participate in the rate negotiation services market. And so if that's the market that counsel's proposing today, the market that UPS and FedEx proposed did not include UPS or FedEx. And if counsel adopts that market, then he's on to another problem, which is the dilemma the plaintiff has faced in this case. We're on our fourth amended complaint. They have no viable antitrust theory. They've tried to define a market. So Judge Morrow initially addressed, dismissed, Judge Reinhardt, their first amended complaint, because they didn't participate in the market they alleged in that complaint, which was the shipping market. So then she suggested possibly they could allege this market, which they then alleged, but that's proven not to be a viable market. They're on the horns of a dilemma. They can't define a market in which they participate and UPS and FedEx participate. And the rate negotiation market is not a market that UPS and FedEx participate in. And so if that's the market, and they never made that market be low, and that should be the end of it, but even if the Court were to consider that market, then they lack standing and antitrust standing, because under this Court's precedent, they have to both participate in the market and be harmed at that market. And the defendant has to participate in that market with them, and UPS and FedEx don't participate in the rate negotiation market. So in answer to your question, Judge Tachima, they've changed their market yet again here today. They shouldn't be allowed to do that. They should just affirm the district court for the reason it gave, but even if you were to consider that market, it doesn't include UPS and FedEx, and therefore they lack standing, if that's their market, and you should affirm for that reason. So either way, there's no viable antitrust claim here. Judge Nguyen, you ask, and he suggested that their claim was that the carriers refused to deal with the shippers.  They addressed these issues on a case-by-case basis. They've never argued tying. You suggest that they've never argued that, nor would that be a viable theory, as I just explained. UPS and FedEx don't sell the rate negotiation services that the third-party negotiators sell. Fundamentally, what they're selling is taking in proposals from multiple carriers, analyzing them, and helping shippers negotiate with those carriers, and UPS and FedEx don't do that, and as I said before, the customers, the shippers, recognize that UPS and FedEx don't do that and uniformly testified in this record they would not switch if so, and I can give you some. So Viasat testified at SER 977-79. AFMS and UPS, quote, provide different services. T. Rowe Price testified. UPS and FedEx, quote, at deposition, I mean testified, quote, do not provide the same type of consulting services that AFMS does, SER 1045-46. And then Crutchfield, another customer said, if AFMS had raised its price 10%, that would not have caused him to consider UPS or FedEx as a potential provider of the services. That's at SER 1018, and that is the relevant economic antitrust test for whether services are reasonably interchangeable. So if you look at the rate negotiation services market and allow them to adopt that market on appeal for the first time, they don't participate in that. We don't participate in that market and they lack antitrust standing. Judge Nguyen, to answer your record issue point, one, we believe it was well within the district's discretion not to look through the record and hunt for their citations. This is a huge record and they should have complied with the district court's orders. But there would be no basis to send it back on the arguments they've made here because they've pointed to nothing in the record that would potentially change the outcome. So whatever the district court did or didn't see as a result of their lack of the pen sites, they point to nothing that would be changed as a result of that. I'm happy to answer any other questions your honors have, otherwise we would request that you affirm. I want to ask you a question about this to Stuart Brotman. Yes, sir. I'm interested in the timing of your motion. You made a motion, right, to preclude his testimony as an expert. We did. That's correct. Now, when you made that motion, had Brotman already like, had you gotten a full report of his proposed expert testimony in this case? If I may, your honor, may I consult with my colleague who was at the trial council? You want to know, what would you like to know before I step away? I'll make sure I ask all the. That's all. That's all. Thank you. We had his report, and he had been deposed at the time that we made the motion. And the judge ruled before he ruled on the summary judgment in a separate order and struck Mr. Brotman, both for lack of qualifications and lack of reliability. But that was partly based upon a report that he had prepared and then exchanged with or given copies to the defendant? That's right, your honor. We had his expert report, and we had taken his deposition based on his expert report. And some of the things that he said, he's not an economist. That's ER 2283 to 86. He has a legal background, but it's not even principally an antitrust law. He has no industry expertise. In his deposition, he testified, quote, I'm not, quote, an expert in the parcel shipping industry, ER 428. And he also, and counsel doesn't He doesn't have to be an expert in the parcel shipping industry, does he? He would need to have some relevant experience to the issues he was proposing to testify about here. Well, I have my experience, but you don't think exposure to the economic literature is enough? No, your honor. Given his background, that he testified as a, you know, seems like a market expert in a number of other cases. In those cases, your honor, I think if you look, and you'll see in our motion, those cases, he likely has expert in communications industry. Right. I understand that, but because of that, I mean, are you saying he can't testify with respect to the, I'll call it the parcel industry, unless he has some experience in the parcel industry? He would need, as the district court correctly concluded, Judge Tashima, he would need one or the other or both. And he has neither. So he's not an economist by training. He has no background in economics, and he has no relevant experience in this industry, which is different than the cases he did testify in. What did he teach at Harvard? What did he teach at Harvard? My memory is it was like a communications law class, Judge Reinhart, of some kind. But there was some, it seems to me there was some economic content to his course. He's not, you know, what it says. When you say background, I think you mean a Ph.D. or something like that. He's not trained in economics. He's not formally trained. It's like you're not trained, or maybe you are trained in economics. I don't know. I'm not formally trained in economics, nor would I be qualified to testify on the relevant market in this case. He's testified as an expert in prior cases. Were those all limited to communications law? Yes. What types of cases were those? No. He didn't testify on the economic aspects of those cases? Will you indulge me one more moment, Your Honor? I think that's right. That's his problem. Right. Thank you very much. I apologize, Your Honor. He was an industry expert in those cases, not testifying about economics, and they dealt with both media and communications.  I don't know. There were two separate reasons to strike him, and the second ground is completely sufficient. The second ground was, and it's that his opinions were not reliable and would be unhelpful to the jury, ER 935. He testified in his deposition, quote, anything I'm thinking about is part of my methodology, ER 476. Well, in a sense, that's true, isn't it? In the same way his report reads like a legal brief, Your Honor, so it doesn't read like something that would be helpful to a jury. And if I may, he said he could not identify a publication setting forth his supposed method, what his method entailed, or whether he or anyone else had ever used it, ER 468, 474, and 481. As the district court determined, Brotman's supposed antitrust economics opinions were nothing more than This is reviewed by an abusive discretion. There is no way this could be reversed under that standard. This expert has no reliable method. There would be no basis to allow him to go to a jury. But on reply, ASMS says in their reply brief in this court that whether he's in or out doesn't make any difference, that it doesn't add anything, and it doesn't because he's really just writing a legal brief based on the facts, and the facts themselves are insufficient. So even if you were to think that he should have let him in, the outcome here would be the same, and the judgment should be affirmed. Thank you, Judge. Thank you. Thank you. Mr. Bleeker. Let me, if I can, just try to do these by ticking them off for you. First, it's insulting that the lawyer stands up here and tells you that these two, this plaintiff didn't compete with them, but her client said, quote, we must consider third-party consultants as a direct competitor. A direct competitor. That's enough to raise a fact issue to deny summary judgment regardless of what the lawyers say. Second, in the Olds case this Court said, quote, defining the market is not the aim of the antitrust law. It merely aids the search for anticompetitive injury, which is not an issue in this case because of the agreement. So if it's not the sine qua non of the antitrust case, why do you grant summary judgment on it? Five times, four times were my cases. Five times this Court has said that in the ordinary case, the definition of the market is an issue to be decided by the jury, not the judge. The evidence in this case was highly conflicting, and there was absolutely no basis for the judge to step in and violate the protocol that says on a motion for summary judgment, he doesn't get to decide the facts. Finally, on Brotman, you know, he testified in three cases. All three times I called him. It is not true that he did not, that he testified on industry facts only. We set this out at page 53 of our opening brief. He testified on the definitions that are relevant market. He testified about competition issues and why certain conduct was anticompetitive. In the Dodger case, the Z Channel case, he addressed why the studio's refusal to allow Z Channel to telecast Dodger games was anticompetitive. And you don't have to be an economist to do that. The law is clear. You don't have to be an economist. And he wasn't. We didn't purport to make him a Ph.D. He had a lot of practical experience. Oh, finally, there's another gross misrepresentation here. He did, and they know this, he did an extensive study on the United States Postal Service. That's what called him to our attention as a witness in this case. The United States Postal Service, USPS, to be distinguished from UPS, also delivers small parcels. And it is, if you included it in the relevant market, it probably would deprive the two defendants from bragging about, bragging about how they have a duopoly, okay, because the United States Postal Service is a huge participant. So Mr. Bratman was going to explain to the jury why the U.S. Postal Service was not really competitive and why it is correct for UPS and FedEx to describe themselves as duopolist because the Postal Service was not an effective or efficient competitor. So there's a lot he could have brought to the table had he been allowed to testify. And finally, you know, the judge, when he struck him, he said, I see parts of his testimony that can be salvaged. He never gave us the chance to do that, even though the ad management case pretty clearly says, I'm not sure, Judge Winder, that this is a discretionary issue, because I think if you read ad management, it pretty clearly says that the party sponsoring testimony ought to be given an opportunity, ought to be given an opportunity to correct it. If there's some deficiency, here. Thank you. To whatever extent plaintiff's evidence regarding product markets is deficient, plaintiff should have been given an opportunity to remedy the deficiency. I don't know whether that winds up being discretionary or not, but to me that's pretty much an admonition that he should have, instead of striking the evidence and not allowing us to go forward, he should have taken the time and said, okay, fix it. And that's what we think ad management directed him to do, and that's what we hope you'll direct him to do when we go back down. Thank you. Thank you, counsel. Case just argued is submitted.
judges: Reinhardt, Tashima, Nguyen